Clarence E. **COUNTERMAN**, Plaintiff,

v.

**UNITED STATES DEPARTMENT OF LABOR**, Defendant.

No. EP–84–CA–441.

United States District Court,
W.D. Texas,
El Paso Division.

Feb. 25, 1985.

Richard Contreras, El Paso, Tex., for plaintiff.

Francis X. Lilly, Sol. of Labor, James E. White, Reg. Sol., Heriberto De Leon, Counsel for Employment Standards, Robert A. Fitz, U.S. Dept. of Labor, Office of the Sol., Dallas, Tex., for defendant.

## MEMORANDUM OPINION AND ORDER

HUDSPETH, District Judge.

This is an appeal from a decision by the Administrative Law Judge (ALJ) that Plaintiff violated certain provisions of the Farm Labor Contractor Registration Act, 7 U.S.C. §§ 2041, *et seq.* (repealed 1983) and the applicable regulations 29 C.F.R. §§ 40.1 *et seq.* (1984). This Court has jurisdiction to review the administrative findings under 29 U.S.C. § 1813(c) (1984). In accordance with this section, the findings of the ALJ should be reversed only if unsupported by "substantial evidence." Substantial evidence is "such relevant evidence as a rea-sonable mind might accept as adequate to support a conclusion." *Richardson v. Perales,* 402 U.S. 389, 401 (1971). Prior to his hearing before the ALJ, Plaintiff stipulated his liability for violations of 7 U.S.C. §§ 2044(b)(1) and 2045(e) for which he was fined $450. The subject of this appeal is the determination by the ALJ that Plaintiff had also violated Sections 5(b)(6) and 6(f) of the Act; for these violations Plaintiff was fined $16,800 and his Certificate of Registration was revoked. Because the ALJ's findings are supported by substantial evidence, his decision should be affirmed.

Plaintiff Clarence E. Counterman was, at the time of the hearing, 64 years of age and had been a farm labor contractor operating in Texas, Arizona, and California for about 25 years. During the period in question, July 1979 to February 1981, Plaintiff came into contact with several thousand farm workers. Over this period, he hired, primarily for the purpose of harvesting chili, approximately 130 workers per day (Tr. 57). Plaintiff generally picked up workers in El Paso sometime between 3:00 a.m. and 4:30 a.m. in order to have them working in the fields by 6:15 a.m. At some point prior to leaving El Paso, Plaintiff checked the workers' "papers" to determine their citizenship. This procedure consisted of a check for a green card, a birth certificate, or a letter from the Immigration and Naturalization Service. Plaintiff produced no records of how citizenship was proved for each worker. Where a worker could produce no documentation of citizenship, Mr. Counterman determined citizenship in a manner he described this way:

"And those that don't have anything and says they are American, then we ask them, Where did you go to school? Or, What is the Mayor's name—which I don't know that myself. Or, What address they live here or where they were born. And that is about all we can go by." (Tr. 74.)

The testimony and exhibits included with the hearing transcript show that Delma Clemons and Richard Anaya, two employees of the Wage and Hour Division of the

Department of Labor, conducted an investigation of Defendant on February 6, 1981. On that date, the investigators arrived at the field being worked by laborers contracted by Defendant. Upon their arrival, two workers fled and one other, Ana Lopez, was apprehended. This experience led to a review of the Border Patrol records concerning the apprehension of illegal aliens who had been hired by Plaintiff. For the period starting July 1, 1979 and ending February 6, 1981, 335 apprehensions of this sort were made. Of the 300 illegal aliens discovered, 42 had been apprehended more than once while working for Mr. Counterman. Mr. Anaya testified that Ana Lopez was part of Plaintiff's work crew on February 6, 1981. She stated to investigators that she had not been asked by Plaintiff for proof of citizenship or eligibility for work in the United States. Ms. Lopez, because she could not be found, did not attend the hearing.

Plaintiff did testify that he suffered a stroke in 1980. There is no indication of the seriousness of this stroke or the degree to which this kept him from participating in the operation of his business.

The central allegation against Plaintiff is that he knowingly hired illegal aliens to work in his crews. Such activity was a violation of the now-repealed 7 U.S.C. § 2044(b)(6) which read:

"(b) Upon notice and hearing in accordance with regulations prescribed by him, the Secretary may refuse to issue, and may suspend, revoke, or refuse to renew a certificate of registration to any farm labor contractor if he finds that such contractor—

(6) has recruited, employed, or utilized the services of a person with knowledge that such person is violating the provisions of the immigration and nationality laws of the United States."

These allegations, if true, also violated 7 U.S.C. § 2045(f) which has been replaced by 29 U.S.C. § 1816(a), a provision of the Migrant and Seasonal Agricultural Worker Protection Act which states:

"No farm labor contractor shall recruit, hire, employ, or use, with knowledge, the services of any individual who is an alien not lawfully admitted for permanent residence or who has not been authorized by the Attorney General to accept employment."

Plaintiff's knowing use of illegal aliens as part of this work force would have been a violation of the applicable regulations as well; 29 C.F.R. § 40.51(p) requires the following:

"A farm labor contractor shall refrain from recruiting, employing or utilizing with knowledge the services of any person who is an alien not lawfully admitted for permanent residence or who has not been authorized by the Attorney General to accept employment, and must evidence an affirmative showing of a *bona fide* inquiry of each prospective employee's status as a United States citizen or as a person lawfully authorized to work in the United States. Such affirmative showing will be deemed to be met by written documentation that reliance in good faith was based on any of the following: [a lengthy list of documents acknowledging citizenship or authorization to work in the United States]."

The Administrative Law Judge's decision that Plaintiff violated the statutory and regulatory provisions listed above is supported by substantial evidence. While the Government had the burden of proving a violation of the statute, under 29 C.F.R. § 40.51(p) it was incumbent upon Plaintiff to "evidence an affirmative showing of a *bona fide* inquiry of each prospective employee's status...." Clearly, this showing was not made. Plaintiff kept no records reflecting the citizenship or work authorization status of the workers he hired. Moreover, at the hearing, he testified that, while it was his general practice to check the "papers" of potential hirees after they boarded his bus, when no documentation was shown, he simply relied on "instinct or something like that." (Tr. 77.) Although there are no cases defining "*bona fide* inquiry" as used in this regula-

tion, Plaintiff's reliance on instinct certainly does not meet this standard.

As evidence of Plaintiff's knowing employment of illegal aliens, the Government introduced Border Patrol records of apprehensions of illegal aliens arrested while working for Plaintiff, which totaled 335 between July 1, 1979 and February 6, 1981. In addition, it provided a condensed, alphabetized list of these aliens and the dates on which they were arrested. These records demonstrated that at least 42 illegal aliens had been arrested on two or more occasions while employed by the Plaintiff. The ALJ imposed a penalty of $16,800, calculated on the basis of $400 for each of these repeat offenders.

■ Title 7, U.S. Code § 2048, as it read prior to 1983, provided:

"Any farm labor contractor or employee thereof who willfully and knowingly violates any provision of this chapter or any regulation prescribed hereunder shall be fined not more than $500."

The regulations promulgated under the statute included 29 U.S.C. § 40.62, which states that monetary penalties may be assessed "for such violation," and 29 C.F.R. § 40.65(b) which states:

"Any assessment of a civil money penalty shall be based on the available evidence and shall take into consideration among others, one or more of the following factors:

(1) Previous history of violation or violations.

(2) The number of migrant workers affected by the violation or violations;

(3) The gravity of the violation or violations;

(4) Efforts made in good faith to comply with the Act.

(5) Explanation of person charged with the violation or violations;

(6) Assurances of future compliance, taking into account the public health, interest or safety;

(7) Financial gain on the part of the violator or financial losses to worker or workers."

The Administrative Law Judge based his imposition of $400 per violation on the following factors:

(1) The large number of United States migrant workers displaced by the illegal aliens hired by Plaintiff;

(2) Plaintiff's lack of good faith effort in trying to comply with the Act;

(3) Plaintiff's financial gain from his hiring practices, and

(4) The financial loss to potential workers displaced by the illegal aliens.

Under the circumstances, the penalty assessed was reasonable and should be affirmed.

It is therefore ORDERED that the decision of the Secretary of Labor be, and it is hereby, AFFIRMED.

It is further ORDERED that judgment be entered in favor of the Defendant, and that the Plaintiff take nothing by his suit.

It is further ORDERED that Plaintiff pay the costs of suit herein incurred.